COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-209-CV

IN THE INTEREST OF J.G.,

A CHILD 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Alberto G. appeals from the order terminating the parent-child relationship between himself and his daughter, J.G.  In one issue, Alberto contends that there is no evidence or insufficient evidence to support the trial court’s finding that termination is in J.G.’s best interest.  Because we hold that the evidence is legally and factually sufficient to support the finding, we affirm the trial court’s termination order.

The State argues that Alberto’s challenge to the best interest finding is simply an attack on the trial court’s decision to name the State as J.G.’s managing conservator instead of Alberto’s mother, Maria, and that therefore Alberto lacks standing and his point should be dismissed.  Because the State had the burden to prove by clear and convincing evidence that termination is in J.G.’s best interest,
(footnote: 2) because the stability of the home or the proposed placement is a factor courts consider in determining best interest,
(footnote: 3) and because the record shows that the State proposed maintaining the placement of J.G. with her foster parents in anticipation of adoption and Alberto proposed that she be placed instead with his mother, who has legal custody of J.G.’s sisters, we hold that Alberto does have standing and shall address his issue on the merits.

Alberto and Valerie, J.G.’s mother, had a history with CPS, and J.G.’s two older sisters were already in the legal custody of their paternal grandmother, Maria, because of the parents’ drug use.  Maria obtained legal custody privately in February 2005.  Valerie was pregnant with J.G. at the time.

The evidence shows that when J.G. was born in June 2005, she and Valerie both tested positive for cocaine.  The State initially chose not to place J.G. in the home with Maria and J.G.’s sisters because of concerns that Maria had allowed the parents access to the children, had known of the parents’ drug use in the home but had ignored it, and would not be able to financially support all three children solely on her income.  After the State reevaluated Maria as a possible placement for J.G., the financial concern dissipated but the concerns about Maria’s ability to protect J.G. continued.

As evidence of the State’s concerns about Maria’s ability to protect J.G., the testimony shows that she told a caseworker that Valerie had been living in her home, on and off, until J.G. was born, even though the trial court’s order giving her managing conservatorship over the two older girls prohibited overnight stays by the parents.  Additionally, a CPS worker testified that when CPS first got involved with Alberto and Valerie, the worker made a surprise visit and found Alberto living in Maria’s home in violation of the safety plan then in place regarding J.G.’s older sisters.  The worker also stated that Maria acknowledged to her that she knew Alberto was using drugs in her home.  The CPS worker believed that Alberto was under the influence of drugs at the time of the surprise visit.  She also testified that Alberto admitted that he had continued to use drugs until J.G. was born, except when he was incarcerated, despite CPS’s prior involvement and the placement of the older girls with Maria.

Additionally, Alberto was placed on deferred adjudication in May 2005 for burglary of a habitation that occurred in February 2005.  He testified that he lived at Maria’s home at the time of the burglary; he also testified that it was his permanent address.  In May 2005, Alberto committed another offense.  His deferred adjudication was revoked in October 2005, based at least in part on the new offense and the use of illegal substances while on probation, and he was sentenced to two years in prison.  His first eligible release date is June 2007.

Alberto testified that he wanted J.G. to be placed with his mother and his two other daughters.  While he testified that he could abide by an order keeping him from the children and would live with his sister upon his release from prison, he also testified that if Maria called and needed his help with babysitting or transporting the girls, he would help her.

At trial, he admitted to being involved in a riot about a month after he became incarcerated, which resulted in him being placed in medium custody, where he was prohibited from taking classes to earn his G.E.D.  Alberto also admitted that he was in no position to parent J.G. and that he had engaged in a pattern of criminal behavior and substance abuse knowing that Valerie was pregnant with J.G.  Alberto did not have a job when J.G. was born, but he testified that he would get a job upon his release from prison.

The CPS worker admitted that Maria was providing a good home for the two older girls except for the protection concerns.  However, the two older girls have no special needs.  J.G. has asthma and requires breathing treatments every three hours for ten days after each attack.  She also has chronic ear infections.  As a result of her poor health, she frequently must stay home from daycare.  Maria smokes but has indicated some willingness to abandon it.  She also has a full-time job.  There was testimony that others in the extended family, including Maria’s elderly mother, could and would help out when necessary.  Maria did not intervene to seek custody in this case.

The State’s proposed permanency plan for J.G. is adoption by her current foster parents, with whom she has lived since her release from the hospital into the State’s care.  The dual-licensed foster parents are the only parents J.G. has ever known.  A CPS worker testified that the foster mother is a loving stay-at-home mother, J.G. is bonded with her, and the worker has no concerns about the foster family’s ability to meet J.G.’s needs now and in the future.  Another CPS worker testified that the foster father works full-time.

There is no indication that Alberto and J.G. bonded in the four months between her birth and the date that he was sentenced to prison.  Additionally, despite the visits between the grandmother and J.G., which sometimes included the other girls, J.G. never lived with her sisters.  Consequently, there is no presumption that J.G. should be housed in the same home as her older sisters.
(footnote: 4)
 Based on the record before us, and applying the appropriate standards of review,
(footnote: 5) we hold that the evidence is legally and factually sufficient to support the trial court’s finding that termination of Alberto’s parental rights is in J.G.’s best interest.  We overrule Alberto’s sole issue and affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  November 2, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See 
T
EX.
 F
AM.
 C
ODE
 A
NN.
 § 161.001(2) (Vernon Supp. 2006)
; 
In re J.L.
, 163 S.W.3d 79, 84 (Tex. 2005).

3:
Holley v. Adams
, 544 S.W.2d 367, 372 (Tex. 1976).

4:
See In re D.R.L.M.
, 84 S.W.3d 281, 304 (Tex. App.—Fort Worth 2002, pet. denied).

5:
See
 
In re J.F.C.
, 96 S.W.3d 256, 265-66 (Tex. 2002); 
In re C.H.
, 89 S.W.3d 17, 25, 28 (Tex. 2002).